UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

CAROL PRILLAMAN

*Plaintiff*,

v.

WAKE FOREST UNIVERSITY,

*Defendant*.

Civil Action No. 26-1154

Complaint

(Jury Trial Demanded)

## INTRODUCTION

1. This is an action for age discrimination under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621–634 (the "ADEA").

2. Carol Prillaman worked for Wake Forest at its Graylyn International Conference Center ("Graylyn") for nearly twenty years, from May 2006 until April 15, 2026. During that time she earned multiple Employee of the Quarter awards, was never disciplined, and never had an unexcused absence.

3. In early 2026, at age 63, Prillaman asked to enter the University's phased retirement program and asked to perform her job remotely, in whole or in part, after her family needed to relocate to Wilmington, North Carolina. Wake Forest already permitted younger Graylyn employees to work fully remotely from Asheville, North Carolina, and St. Augustine, Florida.

4. Rather than give Prillaman an answer, Graylyn's General Manager, John Wise ignored her requests for nearly three months, gave her less than ten minutes to make her case, and then made himself unavailable. Left with no answer and an imminent home closing, Prillaman was forced to retire. Wake Forest then reprimanded Prillaman for telling clients why she was leaving and refused to let her work remotely her final two weeks.

5. Prillaman's age was the but-for cause of Wake Forest's denial of the flexible work arrangements it extended to younger employees and her resulting constructive discharge. Prillaman seeks back pay, front pay, lost benefits, liquidated damages for Defendant's willful violations, attorneys' fees, costs, and all other appropriate relief.

## PARTIES

6. Plaintiff Carol Prillaman is a citizen and resident of New Hanover County, North Carolina. At all times relevant to this action, Ms. Prillaman was employed by Defendant in Forsyth County, North Carolina.

7. At all relevant times, Prillaman was over forty years of age and was an "employee" within the meaning of 29 U.S.C. § 630(f). She was 63 years old when the events described below occurred.

8. Defendant Wake Forest University is a non-profit corporation, with its principal place of business in Winston-Salem, Forsyth County, North Carolina.

9. At all relevant times, Defendant was engaged in an industry affecting commerce and employed twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and is therefore an "employer" within the meaning of 29 U.S.C. § 630(b).

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 29 U.S.C. § 626(c).

11. Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Forsyth County, North Carolina, which lies within the Middle District of North Carolina.

12. This Court has personal jurisdiction over Defendant, which is organized under the laws of North Carolina and maintains its principal place of business in this District.

## ADMINISTRATIVE PREREQUISITES

13. More than sixty days have elapsed since Ms. Prillaman filed her Charge. This action is therefore timely under 29 U.S.C. § 626(d)(1).

14. All conditions precedent to the filing of this action have been performed, have occurred, or have been excused.

## FACTUAL ALLEGATIONS

### A. Prillaman's Near Twenty-Year Career at Graylyn

15. Wake Forest hired Prillaman on or about May 6, 2006, as a Night Auditor at Graylyn.

16. Prillaman was promoted to Front Desk Supervisor in 2007 and, from 2008 until March 2020, served as Graylyn's Accounting Assistant.

17. When Graylyn suspended in-person operations in March 2020 due to the COVID-19 pandemic, Prillaman performed her accounting work remotely, including during a period of furlough, and prepared and submitted Graylyn's North Carolina sales and use tax returns from home.

18. From 2020 to 2022, Prillaman worked for Wake Forest on its Reynolda Campus as a member of the Student COVID Housing staff.

19. In 2021 Prillaman became Graylyn's Reservations and Auxiliary Services Representative / Wedding Room Blocks, the position she held until her separation.

20. Prillaman managed room blocks for weddings and special events, served a dedicated client base, and processed reservations, prepayments, and client credit card payments. Prillaman's client base included high-level University donors, trustees, and guests associated with Wake Forest Advancement and Commencement.

21. Prillaman's workstation was configured to comply with the Payment Card Industry Data Security Standard ("PCI DSS"). Prillaman possessed knowledge of PCI compliance, Graylyn's accounting processes, and the use of Opera, Graylyn's hotel property-management system.

22. In October 2025, when a colleague who had been coordinating Commencement-related work with University Advancement departed unexpectedly, Prillaman assumed those responsibilities in addition to her own.

23. During her employment, Prillaman received multiple Employee of the Quarter awards, was never written up or disciplined, and never had an unexcused absence.

24. In approximately 2016, Prillaman was grandfathered into full-time employee status, with full-time benefits, based on a 1,400-hour annual work requirement. Prillaman worked more than 1,400 hours every year and was on track to do so again in 2026.

### B. Wake Forest Permits Younger Graylyn Employees to Work Remotely

25. Wake Forest's policies permit remote and hybrid work arrangements, and the University publicly promotes flexible work and work–life balance for its staff.

26. Since the COVID-19 pandemic, Wake Forest has permitted at least two Graylyn employees, both substantially younger than Prillaman, to work fully remotely from outside the Winston-Salem area.

27. Chandler Wyatt, Graylyn's Assistant Director of Sales and Marketing, Weddings and Special Events, who is approximately 32 years old, has been permitted to work remotely from Asheville, North Carolina.

28. Shelley Brown, Graylyn's Manager of Sales and Marketing has been permitted to work remotely from St. Augustine, Florida and is approximately 50 years old.

29. Like Prillaman, Wyatt and Brown work within Graylyn's hospitality operations, serve Graylyn's wedding and special-events clients, and are supervised by Wise.

30. Wyatt and Brown work on wireless, internet-based laptop computers that have been granted cashiering permissions in Opera allowing them to accept client credit card information, which the system encrypts, without a hard-wired FreedomPay card terminal.

31. Defendant permitted substantially younger remote employees to accept client payment card information from remote locations.

C. **Prillaman's Request for Phased Retirement**

32. On or about January 1, 2026, Prillaman submitted a written request to participate in the University's phased retirement program under its Phased Retirement Policy.

33. Defendant did not acknowledge or act on Prillaman's request. Prillaman repeatedly followed up with Cody Bowman, Prillaman's manager, seeking a decision.

34. In early March 2026, Bowman told Prillaman that Human Resources did not decide phased retirement requests or changes in employment status, and that the decision rested with the department head, Wise.

35. Wise never communicated to Prillaman a decision on her phased retirement request.

D. **Prillaman's Request for Remote Work**

36. In February 2026, Prillaman informed Bowman that she and her husband needed to relocate to Wilmington, North Carolina, to be near their son because of her husband's serious medical conditions. Prillaman requested permission to work remotely or on a hybrid remote/in-office schedule.[1]

---

[1] Prillaman's husband was covered as a dependent under Wake Forest's group health insurance.

37. Bowman did not grant or deny the request. Bowman did not inform Prillaman of the University's remote work request process or direct her to any policy or application. Bowman instructed Prillaman only to keep him "in the loop" as her home search and move progressed.

38. Beginning in late February 2026, Prillaman sent Bowman a series of emails updating him on her relocation, informing him that she had contracted to purchase a home in Wilmington with a closing date of April 7, 2026, and repeatedly asked for a decision on her remote work request.

39. Prillaman proposed to Bowman and Wise how she could perform her duties remotely while remaining fully PCI compliant, including through the same type of Opera-based, encrypted payment processing already used by Graylyn's younger remote employees.

40. Prillaman's core duties, managing room blocks, communicating with clients by phone and email, and entering reservations and payments in Opera, could be performed remotely, as her own remote work during the COVID-19 closure had demonstrated.

41. Despite Prillaman's repeated requests, Defendant provided no decision, and no reason for withholding one, for more than a month.

E. **The March 26, 2026, Meeting**

42. On Thursday, March 26, 2026, after Prillaman had emailed Bowman multiple times seeking an answer, she was permitted to meet with Wise to advocate for her remote work request. Bowman attended the meeting

43. Wise allotted Prillaman less than ten minutes and cut her presentation short.

44. During the meeting, Wise acknowledged that he did not understand PCI compliance for financial services.

45. Wise did not grant or deny the request. Instead, he asked Prillaman whether it was his job to do what was best for the establishment. When she answered yes, he offered no further explanation of why allowing her to work remotely as he allowed her younger colleagues to do would not be in the establishment's best interest.

46. Wise then ended the meeting, stating that he had another meeting at 4:00 p.m. and that. Prillaman could return the following day to finish the discussion.

47. On Friday, March 27, 2026, Wise was not in the office during. Prillaman's scheduled shift and the discussion never resumed.

**F. Prillaman Is Forced to Retire**

48. On March 27, 2026, Prillaman had sought a decision on phased retirement for nearly three months and on remote work for approximately six

weeks. Prillaman closing's date for her Wilmington home was April 7, 2026, and she still did not know whether she would have a job after she moved.

49. Prillaman's husband, who was 70 years old and has serious, chronic medical conditions, depended on her Wake Forest group health insurance. To avoid any gap in his coverage, Prillaman needed to enroll him in Medicare Part B and supplemental coverage before her employer-provided coverage ended which required her to give notice before April 1, 2026.

50. Defendant's months of delay and non-response left Prillaman with no alternative. Waiting for an answer that Defendant refused to give risked leaving Prillaman's husband without health coverage and leaving her with a new home four hours from a job she could not consistently commute to.

51. After Prillaman's shift ended on March 27, 2026, Prillaman called Lisa Tibbs from Defendant's Human Resources department and gave notice of her retirement effective April 15, 2026. Prillaman offered to continue working through that date to transition her responsibilities.

52. On March 28, 2026, Defendant's Human Resources department stated that it accepted Prillaman's retirement. Prillaman responded that she was not simply resigning but was continuing to seek information about phased retirement and remote work. Defendant did not provide that information.

53. Prillaman did not wish to retire, and would not have retired when she did, had Defendant afforded her the same remote work opportunity it afforded her younger colleagues.

**G. Defendant Reprimands Prillaman and Confirms That Remote Work Was Never Being Considered**

54. On April 1, 2026, Prillaman emailed several of her longtime clients to inform them of her retirement and to explain that she was leaving because Graylyn had not permitted her to work remotely. Clients responded warmly to her messages.

55. On April 2, 2026, Wise summoned Prillaman to his office and admonished her for "unprofessional behavior" based on those emails and instructed her to stop using that "terminology."

56. When Prillaman asked whether her description was inaccurate, Wise responded, I never gave you a direct answer.

57. Also on April 2, 2026, Wise informed Prillaman that remote work was not being considered for her position and that, until her separation on April 15, 2026, she could return to in-person work, take paid leave, or take unpaid leave.

58. Following the April 2nd meeting, Prillaman informed Human Resources in writing that she did not feel comfortable returning to her on-site

workstation and offered to work remotely for her remaining two weeks to transition her responsibilities.

59. Defendant refused to allow Ms. Prillaman to work remotely for her final two weeks. As a result, Prillaman took leave from April 3 2026, through her separation date of April 15, 2026.

H. **Prillaman's Replacement**

60. Upon information and belief, in or about late May 2026, Defendant assigned Prillaman's job responsibilities to Wilkeisham Barner, who is approximately 30 years old.

61. Upon information and belief, Defendant's asserted concern about PCI compliance, if any, is a pretext for age discrimination, as demonstrated by, among other things:

- Defendant's grant of remote payment-processing capability to younger employees;
- Wise's admitted lack of understanding of PCI compliance; Defendant's refusal to engage with Prillaman's proposals, and;
- Defendant's failure to articulate any reason for its decisions while they were being made.

62. Plaintiff suffered losses because of the disparate treatment and constructive discharge on April 15, 2025.

63. But for Plaintiff's age, she would not have received disparate treatment or  been constructively discharged.

**FIRST CLAIM FOR RELIEF**
**(Age Discrimination in Violation of the ADEA 29 U.S.C. § 626 *et seq.*)**

64. Prillaman realleges and incorporates by reference each preceding paragraph as if fully set forth herein.

65. At all relevant times, Prillaman was a member of the class protected by the ADEA, being over forty (40) years of age. 29 U.S.C. § 631(a).

66. Defendant discriminated against Prillaman with respect to the terms, conditions, and privileges of her employment because of her age by, among other things, denying and refusing to act on her request to work remotely or on a hybrid schedule, a privilege Defendant extended to substantially younger, similarly situated employees, and by refusing to act on her request for phased retirement.

67. These actions left Prillaman worse off with respect to the terms, conditions, and privileges of her employment, including where and how she could perform her job and whether she could remain employed after moving.

68. Prillaman's age was the but-for cause of Defendant's actions.

69. Defendant's conduct constitutes unlawful discrimination against Prillaman because of her age, in violation of 29 U.S.C. § 623(a)(1).

70. Defendant's violation of the ADEA was willful in that Defendant knew or showed reckless disregard that its conduct was prohibited by the ADEA, entitling Prillaman to liquidated damages under 29 U.S.C. § 626(b).

71. As a direct and proximate result of Defendant's unlawful conduct, Prillaman has suffered and continues to suffer lost wages, salary, employment benefits, and other losses in amounts to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**(Constructive Discharge ADEA 29 U.S.C. § 626 *et seq.*)**

72. Prillaman realleges and incorporates by reference each preceding paragraph as if fully set forth herein.

73. Defendant, through its discriminatory refusal to extend Prillaman the remote work arrangement it extended to younger employees, its months-long refusal to answer her requests, and the resulting risk to her husband's health coverage and her continued employment, created working conditions so intolerable that a reasonable person in Prillaman's position would have felt compelled to resign.

74. Prillaman resigned by giving notice of her retirement on March 27, 2026, effective April 15, 2026, because of those conditions. Defendant's subsequent reprimand of Prillaman and its refusal to permit her to work remotely even during her transition period confirmed that Defendant would not afford her the arrangement it afforded younger employees.

75. Prillaman's resignation constitutes a constructive discharge and a discharge "because of such individual's age" within the meaning of 29 U.S.C. § 623(a)(1).

76. Prillaman's age was the but-for cause of the conditions that forced her resignation.

77. Defendant's violation of the ADEA was willful, in that Defendant knew, or showed reckless disregard for whether, its conduct was prohibited by the ADEA, entitling Prillaman to liquidated damages under 29 U.S.C. § 626(b).

78. As a direct and proximate result of Defendant's unlawful conduct, Prillaman has suffered and continues to suffer lost wages, salary, employment benefits, and other losses in amounts to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court:

1) For compensatory and liquidated damages pursuant to 29 U.S.C. § 626(b) and 29 U.S.C. § 2617 in an amount to be proven at trial;
2) Award Plaintiff her reasonable attorneys' fees, expert fees, and costs of this action pursuant to 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b);
3) For a trial by jury on all issues triable;
4) Award post-judgment interest on all sums awarded; and
5) Grant such other and further relief as the Court deems just and proper.

This the 29th day of September 2026

**RANDOLPH M. JAMES, P.C.**
*/s/ Randolph M. James*
Randolph M. James, N.C. Bar #10,000
P.O. Box 20069
Winston Salem, NC 27120
336-794-6194
rmjames@rmjameslaw.com
*Attorney for Plaintiff*